# EXHIBIT 1



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

KHALID MOHAMED
Vs. C.A. No. 2015 CA 004121 B
JPMORGAN CHASE BANK, N.A.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge JOHN M CAMPBELL
Date: June 8, 2015
Initial Conference: 9:30 am, Friday, September 11, 2015
Location: Courtroom 519
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

**ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Plaintiff

15-004121

vs.

Case Number

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Name of Plaintiff's Attorney

*Clerk of the Court*

Address

By ______________________
Deputy Clerk

Date ______________________

Telephone

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, ***DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.***

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

____________________________
Demandante

contra

Número de Caso: ________________

____________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

____________________________
Nombre del abogado del Demandante

____________________________
Dirección

Por: ____________________________
Subsecretario

____________________________

____________________________
Teléfono

Fecha ____________________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

**Si desea converser con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-682-2700) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.**

**Vea al dorso el original en inglés**
**See reverse side for English original**

RECEIVED AND RETURNED
Civil Clerk's Office
JUN 08 2015
Superior Court of the
District of Columbia
Washington, D.C.

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

**Khalid Mohamed**
333 I Street #207 Southwest
Washington, District of Columbia 20024

Plaintiff,

v.

**JPMorgan Chase Bank, N.A.**
**Serve**: C T Corporation System
1015 15th Street Northwest
Washington, District of Columbia 20005

Defendant.

Civil Action No. 15-004121

## COMPLAINT AND JURY DEMAND

The Plaintiff, Khalid Mohammed, files suit against defendant JPMorgan Chase Bank, N.A. ("Chase") and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act or "FCRA"), 15 U.S.C. § 1692 et seq. (Fair Debt Collection Practices Act or "FDCPA"), 12 U.S.C. §2605 et seq. (Real Estate Settlement Procedures Act or "RESPA"); the common law torts of defamation, trespass and conversion, breach of contract and declaratory judgment.

## PARTIES

2. The plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

3. Defendant Chase is a national banking association organized under the laws of the United States. Chase provides financial services, including mortgage-related services to consumers and financial entities. Chase originates, services, sells and purchases mortgage

loans. Upon information and belief Chase acquired EMC Mortgage Corporation in March 2008.

## FACTS

4. Mr. Mohamed owns residential property located at 333 I Street, Unit 207, Washington, District of Columbia 20024 ("Property"). The Property was subject to a mortgage loan, which was evidenced by a promissory note that was payable to GreenPoint Mortgage Funding, Inc. ("GreenPoint").

5. Plaintiff began paying EMC Mortgage Corporation after it claimed to have acquired the servicing of the loan.

6. Mr. Mohamed ceased paying EMC after it failed to establish it was a holder of the Note when Mr. Mohamed requested such information.

7. EMC declared the Note in default and continued to attempt to collect the debt even after failing to demonstrate it was entitled to collect payment under the Note.

8. Mr. Mohamed periodically responded by repeating his request for documentation that EMC was entitled to payment.

9. On April 6, 2011 EMC responded to a letter from Mr. Mohamed where EMC purported to provide a certified copy of the Note as evidence of its entitlement to enforce the Note. EMC further stated that the servicing of the loan was transferred to Chase and that the owner of the loan was Wells Fargo Trust.

10. The Note provided with EMC's April 6th 2011 correspondence was payable to GreenPoint and was not indorsed.

11. Under District of Columbia law neither EMC nor Chase were a "holder" of the Note and therefore neither was presumed to be entitled to enforce the Note.

12. Under District of Columbia law both EMC and Chase were obligated to prove that either had a right to enforce the Note.

13. Mr. Mohamed requested proof that the servicing and ownership was transferred to Chase and Wells Fargo Trust, respectively.

14. Neither EMC nor Chase provided documentation establishing how either had acquired the right to enforce the Note.

15. Despite having no standing to enforce the Note, in summer of 2012 Chase sent agents to the property to change the locks on the Property and remove Mr. Mohamed's personal property from the Property.

16. Even if Chase was a holder of the Note it had no right to enter the Property because it failed to provide notice prior to entering the Property and there is no authority under the Note or Deed of Trust to remove Plaintiff's personal property.

17. Mr. Mohamed continued to send letters to Chase throughout the past years and in those letters he disputed Chase could collect payment under the Note without showing it was entitled to enforce the Note.

18. Mr. Mohamed's most recent letter was sent on or about September 30, 2014. In his letter Mr. Mohamed reminded Chase that it had yet to establish that it was entitled to enforce the Note. He then stated that no interest should be assessed by Chase on the loan after April 6th 2011, which was the date it failed to show it was entitled to enforce the Note. He further stated that Chase had no right to declare him delinquent on his payments from April 6th 2011 to present and that Chase should refrain from reporting as such to the credit bureaus. In his letter Mr. Mohamed specifically requested that Chase: (i) send documentation that established EMC was entitled to receive payments prior to April 6th 2011, (ii) deduct all interest assessed on the loan prior to April 6th 2011 if no documentation is found to show

EMC could enforce the Note, (iii) send a payoff statement, (iv) send documentation that shows Chase is currently entitled to receive payments under the Note and (v) coordinate a date, time and location for him to inspect the original promissory note. Mr. Mohamed concluded by stating he "intend[ed[ on satisfying th[e] debt obligation and it is essential that Chase show that it is the proper party to pay."

19. Chase did not provide a response with any of the requested information.

20. On October 1, 2014 Mr. Mohamed disputed the Chase mortgage account with each of the three national credit bureaus. The dispute was based on Chase's failure to show it was entitled to collect payment. The credit bureaus responded to Mr. Mohamed's dispute by stating they had forwarded the dispute to Chase and that Chase verified the information as being reported accurately.

21. Even after receiving Mr. Mohamed's dispute of the delinquent payments from April 2011 to present, Chase continued to report Mr. Mohamed late from for April 2011 to present despite Chase's obligation to cease such reporting for 60 days after receiving Mr. Mohamed's dispute.

22. Even after receiving notice of Mr. Mohammed's dispute from the credit bureaus, Chase continued to report the mortgage account as delinquent and did not notate that the account was disputed.

**COUNT ONE: VIOLATIONS OF FCRA**

23. Defendant Chase violated the FCRA at §1681s-2(b)(1)(D) & (E) by failing to delete or modify the accounts after it concluded a reasonable investigation of Plaintiff's dispute.

24. Defendant Chase has no documentation to show that it is entitled to enforce the Note. The Note is payable to GreenPoint and has not been indorsed. Chase does not have

an assignment or an allonge to the Note showing that it was transferred from GreenPoint to anyone, much less Chase. Plaintiff requested such documentation and Chase did not have the documentation to provide to Plaintiff.

25. A reasonable investigation by Chase would have concluded that Chase had no right to collect payment and that Chase could not hold Mr. Mohamed in default. Chase was required to modify its reporting or delete the account after it is was unable to verify that it had a right to collect payment, let alone provide such documentation to Plaintiff of that right.

26. Chase further violated the FCRA when it failed to notate the mortgage account was disputed after receiving Plaintiff's dispute via the credit bureaus.

27. Plaintiff is seeking punitive damages in the amount of $100,000 for Defendant's willful violations of the FCRA under 15 U.S.C. §1681n. Plaintiff is also seeking actual damages in the amount of $50,000 for Defendants' negligent and willful violations of the FCRA under 15 U.S.C. §§1681n & 1681o. Additionally, Plaintiff is entitled to statutory damages of $1,000 for each FCRA violation and his costs for bringing this action. Plaintiff also will seek attorney fees once he retains counsel.

## COUNT TWO: VIOLATIONS OF FDCPA

28. Plaintiffs incorporate paragraphs 1-27 by reference.

29. Defendant Chase treated the account as in default upon its purported acquisition of the loan.

30. Defendants Chase violated 15 U.S.C. §1692e(8)&(1) by reporting to the credit bureaus information that it knew was false.

31. Defendant Chase violated 15 U.S.C. §1692e(8)&(10) by reporting false and derogatory information to the credit bureaus as a collection method to provoke Plaintiff into paying Chase when Chase knew it was not entitled to receive the payment.

32. Defendant Chase violated 15 U.S.C. §1692e(8)&(10) by failing to report that the account was disputed when it reported Plaintiff's credit information to the credit bureaus.

33. Chase's foregoing illegal debt collection activities and violations of the FDCPA have caused the Plaintiff to incur economic damages and emotional and mental distress.

34. Plaintiff seeks actual damages in an amount of $10,000, statutory damages in an amount of $1,000 and reserves his right to seek reasonable attorney's fees in the event he obtains counsel.

**COUNT THREE: DEFAMATION**

35. The allegations set forth in paragraphs 1 - 34 above are realleged and incorporated by reference as if fully set forth herein.

36. Chase's own records clearly demonstrate that it has no right to collect payment under the Note. Specifically, the Note that Chase claims to enforce is unenforceable by Chase because it is payable to GreenPoint. Chase has no other documentation to show that it acquired a right to enforce the Note or is otherwise the proper person to enforce it.

37. Chase was made aware of this inadequacy on a number of occasions over a number of years. Chase received disputes directly from the Plaintiff and indirectly Plaintiff via the credit bureaus. Chase was on notice that its legal authority to collect under the Note was insufficient.

38. Despite knowing it had no right to enforce the Note, Chase published that Plaintiff was delinquent on his mortgage payments to Chase. The statements were defamatory in tending to injure the Plaintiff's credit profile and credit reputation in the financial community, as it impugn him to be financially irresponsible when in fact Plaintiff had a legitimate reason not to pay Chase.

39. In its publications or reporting to the CRAs, Defendant Chase knowingly made the aforementioned false and defamatory statements about Plaintiff as a collection tactic to coerce Plaintiff into paying Chase.

40. Defendant Chase published this false and defamatory publication to the credit bureaus, who reasonably understood this publication to be defamatory.

41. Defendant Chase knew the CRAs would publish the false and defamatory publication to other creditors and users of Plaintiff's credit report.

42. Defendant Chase acted with knowledge of the falsity of the statements and with the intent to harm the Plaintiff's chances of obtaining credit when instructing the CRAs to report the erroneous and derogatory credit information about the Plaintiff.

43. As a result of the false and defamatory statements published by Defendant Chase, the character and financial reputation of the Plaintiff was harmed, his standing and reputation in the financial and credit community were impaired, and he suffered mental anguish.

44. As a direct and proximate result of the false and defamatory credit reporting published by Defendant Chase, Plaintiff's credit score and credit profile was injured, thereby suffering a loss of prospective credit.

**COUNT FOUR: TRESPASS**

45. Plaintiff reincorporates all the allegations above by reference.

46. Plaintiff, as the owner of the property, has a possessory interest in the Property.

47. Defendant, either directly or indirectly, caused certain persons to physically enter into the Property and make unauthorized changes to the Property, including changing the locks.

48. Plaintiff received no notice and had no knowledge that the Defendant planned on entering the Property.

49. Plaintiff did not authorize the Defendant to enter the Property.

50. The Defendant has no interest in the Deed of Trust and no authorization arising from the DOT to enter the Property.

51. Plaintiff incurred actual damages as a result of Defendant's trespass when the Defendant's agents removed and altered property.

52. Plaintiff has suffered emotional distress as a result of Defendant's trespass on his Property.

**COUNT FIVE: CONVERSION**

53. Plaintiff reincorporates all the allegations above by reference.

54. The Defendant's agents entered into the Plaintiff's real Property and removed personal property of the Plaintiff, including his vehicles, electronics, pictures, papers, furniture, collectibles, money, memorials and more.

55. The Defendant knows it has no legal bounds to take Plaintiff's personal property but routinely takes possession of a borrower's real and personal property after declaring the loan in default.

56. Defendant's motivation for such legal acts is to punish the borrower and deter the borrower from questioning Chase's authority to act under the terms of the Note.

57. Upon information and belief the Defendant instructed its agents that the personal property inside the Property belonged to the Defendant.

58. The Defendant's agents intended to remove the Plaintiff's personal property.

59. Upon information and belief the Defendant was motivated by malice when it instructed its agents to remove the Plaintiff's personal property from the Property.

60. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for compensatory damages, actual damages and punitive damages.

**COUNT SIX: BREACH OF CONTRACT**
**(*In The Alternative*)**

61. Plaintiff reincorporates all the allegations above by reference.

62. The DOT governs certain aspects of the loan agreement with the Plaintiff and Lender.

63. The DOT stipulates the circumstances in which the Lender or Noteholder can enter the Plaintiffs Property.

64. The DOT contains a provision that states that the Lender or Noteholder must provide notice to the Plaintiff that the Lender or Noteholder intends to inspect the Property.

65. The DOT further states that the Lender or Noteholder must have a reasonable cause to inspect the Property.

66. The provisions in the DOT that permit a Lender or Noteholder to enter the Property indicate that Plaintiffs abandonment of the Property constitutes reasonable cause to enter the Property.

67. The Plaintiff never took any affirmative action to indicate that he disavowed the Property or was otherwise abandoning the Property.

68. For sake of argument, if the Defendant did have standing to enforce the DOT, Chase breached its contractual obligation to the Plaintiff by entering the Property without providing the Plaintiff with prior notice and without a reasonable cause to enter the Property.

69. The Defendant's breach caused the Plaintiff to expend money and otherwise suffer pecuniary losses and actual damages.

70. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for compensatory damages. In the alternative, the Defendants are liable for nominal damages.

**COUNT SEVEN: DECLARATORY JUDGMENT**

71. Plaintiff reincorporates all the allegations above by reference.

72. Defendant is not in possession of the Note.

73. Defendant has no interest in the Note or DOT.

74. Plaintiff had no obligation to pay Chase when Chase failed or refused to document its legal right to enforce the Note.

75. Plaintiff tender payment to Chase when Plaintiff conditioned his payment on Chase showing it was entitled to receive that payment.

76. No interest, fees and charges could be assessed on the Note following Chase's failure to prove its right to collect payment.

77. No interest, fees and charges could be assessed on the Note following Plaintiff's reasonable and rightful conditional tender of payment to Chase.

78. Defendant is actively seeking to enforce the Note and collect payments, including interest assessed on the Note for time periods occurring after Chase's failure to document its right to collect payment and Plaintiff's conditional tender of payment.

79. Plaintiff requests this Court find that Chase is not a "holder" of the Note and without right to enforce the Note.

80. Plaintiff requests this Court find that no interest be assessed on the Note subsequent to Chase's failure to document its right to collect payment under the Note and/or Plaintiff's conditional tender of payment.

**COUNT EIGHT: RESPA**

81. Plaintiff realleges and incorporates paragraphs 1 through 80 above as if fully set out herein.

82. Plaintiff submitted letter(s) that constituted a "qualified written request" under 12 U.S.C. §2605(e)(1)(B). Plaintiff's letter(s) was/were written correspondence other than notice on a payment coupon or other payment medium supplied by Defendant Chase and contained Plaintiff's name, account number, account disputes and/or requests for information.

83. Defendant Chase violated 12 U.S.C. §2605(e)(1)(A) by failing to provide the Plaintiff with notice that it had received his "qualified written requests."

84. Upon information and belief the Defendant Chase's conduct is not just limited to the named Plaintiff in this action but Chase also fails to provide notice of receipt to other mortgagors who submit letters that constitute qualified written requests.

85. Defendant Chase violated 12 U.S.C. §2605(e)(2) by failing to take appropriate action within 30 days of receiving Plaintiff's "qualified written requests."

86. Upon information and belief the Defendant Chase's conduct is not just limited to the named Plaintiff in this action but Chase also fails to take appropriate action within 30 days of receiving disputes of other mortgagors who submit letters that constitute qualified written requests.

87. Defendant Chase violated §2605(e)(3) by providing information to credit reporting agencies regarding delinquent and/or overdue payments owed by Plaintiff during the sixty (60) day period following Chase's receipt of Plaintiff's "qualified written requests."

88. Defendant Chase's violations were numerous and consistent, constituting a "pattern or practice" of noncompliance with the requirements of 12 U.S.C §2605 *et seq.*

89. As a result of the conduct, actions and inactions of Defendant Chase, Plaintiff suffered actual damages, including out-of-pocket expenses and emotional and mental distress.

90. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages in an amount to be determined by the jury pursuant to 12 U.S.C. §2605f(1)(A), statutory damages pursuant to 12 U.S.C. §2605f(1)(B), costs and reasonable attorney's fees pursuant to 12 U.S.C. §2605f(3).

**WHEREFORE**, Plaintiff respectfully prays:

(a) $151,000 in punitive, actual damages and statutory damages for Counts I and III;
(b) $10,000 in actual damages plus $1,000 in statutory damages for Count II;
(c) $125,000 in actual and/or compensatory damages for Count III;
(d) $350,000 in punitive and actual damages for Counts IV-VI;
(e) Judgment declaring Chase is not entitled to enforce the Note for Count VII;
(f) Jury award of actual and statutory damages for Count VIII;
(g) Award costs and reasonable attorney's fees and costs; and
(h) Any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

KHALID MOHAMED

/s/

Khalid Mohamed (Pro Se)
333 I Street Southwest - Unit 207
Washington, District of Columbia 20024
Telephone: (202) 810-5720