## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Khalid Mohamed** <br> 333 I Street #207 Southwest <br> Washington, District of Columbia 20024 <br><br> Plaintiff, <br><br> v. <br><br> **JPMorgan Chase Bank, N.A.** <br> **Serve**: C T Corporation System <br> 1015 15th Street Northwest <br> Washington, District of Columbia 20005 <br><br> Defendant, <br><br> AND <br><br> Select Portfolio Servicing, Inc. <br> Serve: Corporation Service Company <br> 1090 Vermont Avenue Northwest <br> Washington, District of Columbia 20005 <br><br> Defendant. | Civil Action 1:15-cv-01016-JEB |

## AMENDED COMPLAINT AND JURY DEMAND

The Plaintiff, Khalid Mohammed, files suit against defendant JPMorgan Chase Bank, N.A. ("Chase") and Select Portfolio Servicing, Inc. ("SPS") and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act or "FCRA"), 15 U.S.C. § 1692 et seq. (Fair Debt Collection Practices Act or "FDCPA"), 12 U.S.C. §2605 et seq. (Real Estate Settlement Procedures Act or "RESPA"); the common law torts of defamation, trespass and conversion, breach of contract and declaratory judgment.

1

## PARTIES

2. The plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

3. Defendant Chase is a national banking association organized under the laws of the United States. Chase provides financial services, including mortgage-related services to consumers and financial entities. Chase originates, services, sells and purchases mortgage loans. Upon information and belief Chase acquired EMC Mortgage Corporation in March 2008.

4. Defendant SPS, formerly known as Fairbanks Capital Corp., operates as a mortgage servicing company that specializes in the servicing of single-family residential mortgage loans, including both performing and non-performing mortgage loans.

## FACTS

5. Mr. Mohamed owns residential property located at 333 I Street, Unit 207, Washington, District of Columbia 20024 ("Property"). The Property was subject to a mortgage loan, which was evidenced by a promissory note that was payable to GreenPoint Mortgage Funding, Inc. ("GreenPoint").

6. Plaintiff began paying EMC Mortgage Corporation after it claimed to have acquired the servicing of the loan.

7. Mr. Mohamed ceased paying EMC after it failed to establish it was a holder of the Note when Mr. Mohamed requested such information.

8. EMC declared the Note in default and continued to attempt to collect the debt even after failing to demonstrate it was entitled to collect payment under the Note.

9. Mr. Mohamed periodically responded by repeating his request for documentation that EMC was entitled to payment.

10. On April 6, 2011 EMC responded to a letter from Mr. Mohamed where EMC purported to provide a certified copy of the Note as evidence of its entitlement to enforce the Note. EMC further stated that the servicing of the loan was transferred to Chase and that the owner of the loan was Wells Fargo Trust.

11. The Note provided with EMC's April 6th 2011 correspondence was payable to GreenPoint and was not indorsed.

12. Under District of Columbia law neither EMC nor Chase were a "holder" of the Note and therefore neither was presumed to be entitled to enforce the Note.

13. Under District of Columbia law both EMC and Chase were obligated to prove that either had a right to enforce the Note.

14. Mr. Mohamed requested proof that the servicing and ownership was transferred to Chase and Wells Fargo Trust, respectively.

15. Neither EMC nor Chase provided documentation establishing how either had acquired the right to enforce the Note.

16. Despite having no standing to enforce the Note, in summer of 2012 Chase sent agents to the property to change the locks on the Property and remove Mr. Mohamed's personal property from the Property.

17. Even if Chase was a holder of the Note it had no right to enter the Property because it failed to provide notice prior to entering the Property and there is no authority under the Note or Deed of Trust to remove Plaintiff's personal property.

18. Mr. Mohamed continued to send letters to Chase throughout the past years and in those letters he disputed Chase could collect payment under the Note without showing it was entitled to enforce the Note.

19. Mr. Mohamed sent a letter on or about September 30, 2014. In his letter Mr. Mohamed reminded Chase that it had yet to establish that it was entitled to enforce the Note. He then stated that no interest should be assessed by Chase on the loan after April 6th 2011, which was the date it failed to show it was entitled to enforce the Note. He further stated that Chase had no right to declare him delinquent on his payments from April 6th 2011 to present and that Chase should refrain from reporting as such to the credit bureaus. In his letter Mr. Mohamed specifically requested that Chase: (i) send documentation that established EMC was entitled to receive payments prior to April 6th 2011, (ii) deduct all interest assessed on the loan prior to April 6th 2011 if no documentation is found to show EMC could enforce the Note, (iii) send a payoff statement, (iv) send documentation that shows Chase is currently entitled to receive payments under the Note and (v) coordinate a date, time and location for him to inspect the original promissory note. Mr. Mohamed concluded by stating he "intend[ed] on satisfying th[e] debt obligation and it is essential that Chase show that it is the proper party to pay."

20. Chase did not provide a response with any of the requested information.

21. On October 1, 2014 Mr. Mohamed disputed the Chase mortgage account with each of the three national credit bureaus. The dispute was based on Chase's failure to show it was entitled to collect payment. The credit bureaus responded to Mr. Mohamed's dispute by stating they had forwarded the dispute to Chase and that Chase verified the information as being reported accurately.

22. Even after receiving Mr. Mohamed's dispute of the delinquent payments from April 2011 to present, Chase continued to report Mr. Mohamed late from for April 2011 to present despite Chase's obligation to cease such reporting for 60 days after receiving Mr. Mohamed's dispute.

23. Even after receiving notice of Mr. Mohammed's dispute from the credit bureaus, Chase continued to report the mortgage account as delinquent and did not notate that the account was disputed.

24. By letter dated October 17, 2014 Chase sent a letter stating SPS would acquire the servicing of Plaintiff's mortgage loan.

25. On August 10, 2015 Plaintiff wrote a letter to both Chase and SPS wherein he requested Chase to provide an explanation of:

    a. how Chase calculated the Plaintiff had an unpaid $590,856.13;

    b. how the original principal balance of $548,000 increased to an unpaid balance of $590,856.13;

    c. how the $42,974.56 deferred interest balance was calculated;

    d. how the monthly payment affects the deferred interest balance;

    e. how the $166,537.30 past due amount was calculated; and

    f. whether the $166,537.30 past due amount includes principal and interest.

26. The August 10, 2015 letter requested Chase to provide an explanation of why interest was assessed on $590,856.13 instead of the original principal amount of $548,000.00. Plaintiff further requested SPS provide a payoff statement.

27. In his letter, the Plaintiff also advised SPS that its predecessor, Chase, was not a holder of the Note and therefore SPS could not obtain the status of a holder from its transfer from Chase. Plaintiff requested SPS to identify the entity in possession of the original Note and send him a certified copy of the original Note. And Plaintiff further requested SPS identify who the lender or owner of the mortgage loan. Continuing, Plaintiff disputed that SPS could declare

Plaintiff in default and disputed that SPS could collect payments on the Note. In conclusion, the Plaintiff requested SPS to make arrangements for Plaintiff to physically inspect the original promissory note.

28. Both Chase and SPS received Plaintiff's letter dated August 10, 2015, but neither responded to Plaintiff's inquiries contained in the letter.

29. Despite Plaintiff's dispute that he was delinquent on his mortgage payments, SPS not only reported that Plaintiff was delinquent on the disputed payments, but did so without notating that the account was disputed.

30. Mr. Mohamed also forwarded his August 10, 2015 letter to each of the three national credit bureaus. Upon information and belief, the credit bureaus forwarded notice of Plaintiff's dispute to Chase and SPS. The Defendants summarily determined that the information was being reported accurately without looking into the merits of Plaintiff's claims. The Defendants purported investigation of the Plaintiff's dispute was to simply verify that the information was being reported consistently with its prior reportings. Thus, the Defendants made no effort to determine if its prior reporting was accurate or inaccurate. Defendant's assumption that its information was accurate without investigating whether the information was accurate is not an investigation and is not only unreasonable but a willful violation of the FCRA.

31. Plaintiff's credit reports containing the inaccurate SPS and Chase tradelines were furnished to creditors after Plaintiff's disputes of the inaccurate information.

32. The inaccurate SPS and Chase tradelines caused Plaintiff's credit score to decrease significantly and the inaccurate tradelines were a substantial factor in Plaintiff's inability to obtain credit.

## COUNT ONE: VIOLATIONS OF FCRA

33. Plaintiff incorporates paragraphs 1-32 by reference.

34. Defendants Chase and SPS violated the FCRA at §1681s-2(b)(1)(D) & (E) by failing to delete or modify the accounts after it concluded a reasonable investigation of Plaintiff's dispute.

35. Defendants have no documentation to show that it is entitled to enforce the Note. The Note is payable to GreenPoint and has not been endorsed. Defendants do not have an assignment or an allonge to the Note showing that it was transferred from GreenPoint to anyone, much less Chase or SPS. Plaintiff requested such documentation and Defendants did not have the documentation to provide to Plaintiff.

36. A reasonable investigation by the Defendants would have concluded that Defendants had no right to collect payment and that they could not hold Mr. Mohamed in default. Chase and SPS were required to modify its reporting or delete the account after it is was unable to verify that it had a right to collect payment, let alone provide such documentation to Plaintiff of that right.

37. Defendants Chase and SPS further violated the FCRA when it failed to notate the mortgage account was disputed after receiving Plaintiff's dispute via the credit bureaus.

38. Plaintiff is seeking punitive damages in the amount of $100,000 for Defendant's willful violations of the FCRA under 15 U.S.C. §1681n. Plaintiff is also seeking actual damages in the amount of $50,000 for Defendants' negligent and willful violations of the FCRA under 15 U.S.C. §§1681n & 1681o. Additionally, Plaintiff is entitled to statutory damages of $1,000 for each FCRA violation and his costs for bringing this action. Plaintiff also will seek attorney fees once he retains counsel.

## COUNT TWO: VIOLATIONS OF FDCPA

39. Plaintiffs incorporate paragraphs 1-32 by reference.

40. Defendants Chase and SPS treated the account as in default upon its purported acquisition of the loan.

41. Defendants Chase and SPS violated 15 U.S.C. §1692e(8)&(1) by reporting to the credit bureaus information that it knew was false.

42. Defendant Chase and SPS violated 15 U.S.C. §1692e(8)&(10) by reporting false and derogatory information to the credit bureaus as a collection method to provoke Plaintiff into paying Defendants when Defendants knew they were not entitled to receive the payment.

43. Defendants Chase and SPS violated 15 U.S.C. §1692(e) (8), (10) by failing to report that the account was disputed when it reported Plaintiff's credit information to the credit bureaus.

44. Defendants' foregoing illegal debt collection activities and violations of the FDCPA have caused the Plaintiff to incur economic damages and emotional and mental distress.

45. Plaintiff seeks actual damages in an amount of $10,000, statutory damages in an amount of $1,000 and his reasonable attorney's fees.

## COUNT THREE: DEFAMATION

46. Plaintiffs incorporate paragraphs 1-32 by reference..

47. Chase's own records clearly demonstrate that it has no right to collect payment under the Note. Specifically, the Note that Chase claims to enforce is unenforceable by Chase because it is payable to GreenPoint. Chase has no other documentation to show that it acquired a right to enforce the Note or is otherwise the proper person to enforce it.

48. Chase was made aware of this inadequacy on a number of occasions over a number of years. Chase received disputes directly from the Plaintiff and indirectly Plaintiff via the credit bureaus. Chase was on notice that its legal authority to collect under the Note was insufficient.

49. Despite knowing it had no right to enforce the Note, Chase published that Plaintiff was delinquent on his mortgage payments to Chase. The statements were defamatory in tending to injure the Plaintiff's credit profile and credit reputation in the financial community, as it impugn him to be financially irresponsible when in fact Plaintiff had a legitimate reason not to pay Chase.

50. In its publications or reporting to the CRAs, Defendant Chase knowingly made the aforementioned false and defamatory statements about Plaintiff as a collection tactic to coerce Plaintiff into paying Chase.

51. Defendant Chase published this false and defamatory publication to the credit bureaus, who reasonably understood this publication to be defamatory.

52. Defendant Chase knew the CRAs would publish the false and defamatory publication to other creditors and users of Plaintiff's credit report.

53. Defendant Chase acted with knowledge of the falsity of the statements and with the intent to harm the Plaintiff's chances of obtaining credit when instructing the CRAs to report the erroneous and derogatory credit information about the Plaintiff.

54. As a result of the false and defamatory statements published by Defendant Chase, the character and financial reputation of the Plaintiff was harmed, his standing and reputation in the financial and credit community were impaired, and he suffered mental anguish.

55. As a direct and proximate result of the false and defamatory credit reporting published by Defendant Chase, Plaintiff's credit score and credit profile was injured, thereby suffering a loss of prospective credit.

## COUNT FOUR: TRESPASS

56. Plaintiffs incorporate paragraphs 1-32 by reference

57. Plaintiff, as the owner of the property, has a possessory interest in the Property.

58. Defendant, either directly or indirectly, caused certain persons to physically enter into the Property and make unauthorized changes to the Property, including changing the locks.

59. Plaintiff received no notice and had no knowledge that the Defendant planned on entering the Property.

60. Plaintiff did not authorize the Defendant to enter the Property.

61. The Defendant has no interest in the Deed of Trust and no authorization arising from the DOT to enter the Property.

62. Plaintiff incurred actual damages as a result of Defendant's trespass when the Defendant's agents removed and altered property.

63. Plaintiff has suffered emotional distress as a result of Defendant's trespass on his Property.

## COUNT FIVE: CONVERSION

64. Plaintiffs incorporate paragraphs 1-32 by reference.

65. The Defendant's agents entered into the Plaintiff's real Property and removed personal property of the Plaintiff, including his vehicles, electronics, pictures, papers, furniture, collectibles, money, memorials and more.

66. The Defendant knows it has no legal bounds to take Plaintiff's personal property but routinely takes possession of a borrower's real and personal property after declaring the loan in default.

67. Defendant's motivation for such legal acts is to punish the borrower and deter the borrower from questioning Chase's authority to act under the terms of the Note.

68. Upon information and belief the Defendant instructed its agents that the personal property inside the Property belonged to the Defendant.

69. The Defendant's agents intended to remove the Plaintiff's personal property.

70. Upon information and belief the Defendant was motivated by malice when it instructed its agents to remove the Plaintiff's personal property from the Property.

71. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for compensatory damages, actual damages and punitive damages.

### COUNT SIX: BREACH OF CONTRACT
**(*In The Alternative*)**

72. Plaintiffs incorporate paragraphs 1-32 by reference.

73. The DOT governs certain aspects of the loan agreement with the Plaintiff and Lender.

74. The DOT states the circumstances in which the Lender or Noteholder can enter the Plaintiff's Property.

75. The DOT contains a provision that states that the Lender or Noteholder must provide notice to the Plaintiff that the Lender or Noteholder intends to inspect the Property.

76. The DOT further states that the Lender or Noteholder must have a reasonable cause to inspect the Property.

77. The provisions in the DOT that permit a Lender or Noteholder to enter the Property indicate that Plaintiff's abandonment of the Property constitutes reasonable cause to enter the Property.

78. The Plaintiff never took any affirmative action to indicate that he disavowed the Property or was otherwise abandoning the Property.

79. For sake of argument, if Chase did have standing to enforce the DOT, Chase breached its contractual obligation to the Plaintiff by entering the Property without providing the Plaintiff with prior notice and without a reasonable cause to enter the Property.

80. The Defendant's breach caused the Plaintiff to expend money and otherwise suffer pecuniary losses and actual damages.

81. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for compensatory damages. In the alternative, the Defendants are liable for nominal damages.

## COUNT SEVEN: DECLARATORY JUDGMENT

82. Plaintiffs incorporate paragraphs 1-32 by reference.

83. Defendant SPS is not in possession of the Note.

84. Defendant SPS has no interest in the Note or DOT.

85. Plaintiff had no obligation to pay Chase when Chase failed or refused to document its legal right to enforce the Note.

86. Plaintiff has no obligation to pay SPS.

87. Plaintiff tendered payment to Chase when Plaintiff conditioned his payment on Chase showing it was entitled to receive that payment.

88. No interest, fees and charges could be assessed on the Note following Chase's failure to prove its right to collect payment.

89. No interest, fees and charges could be assessed on the Note following Plaintiff's reasonable and rightful conditional tender of payment to Chase.

90. Defendant SPS is actively seeking to enforce the Note and collect payments, including interest assessed on the Note for time periods occurring after its predecessor-in-interest Chase's failure to document its right to collect payment and Plaintiff's conditional tender of payment.

91. Plaintiff requests this Court find that SPS is not a "holder" of the Note and without right to enforce the Note.

92. Plaintiff requests this Court find that no interest be assessed on the Note subsequent to Chase's failure to document its right to collect payment under the Note and/or Plaintiff's conditional tender of payment.

## COUNT EIGHT: RESPA

93. Plaintiff incorporate paragraphs 1-32 by reference.

94. Plaintiff submitted letter(s) that constituted a "qualified written request" under 12 U.S.C. §2605(e) (1) (B). Plaintiff's letter(s) was/were written correspondence other than notice on a payment coupon or other payment medium supplied by Defendants Chase and SPS and the correspondence(s) contained Plaintiff's name, account number, account disputes and/or requests for information.

95. Defendants Chase and SPS violated 12 U.S.C. §2605(e)(1)(A) by failing to provide the Plaintiff with notice that it had received his "qualified written requests."

96. Upon information and belief the Defendants Chase's and SPS' conduct are not just limited to the named Plaintiff in this action but the Defendants also fail to provide notice of receipt to other mortgagors who submit letters that constitute qualified written requests.

97. Defendants Chase and SPS violated 12 U.S.C. §2605(e)(2) by failing to take appropriate action within 30 days of receiving Plaintiff's "qualified written requests."

98. Upon information and belief the Defendant Chase's and SPS' conduct are not just limited to the named Plaintiff in this action but the Defendants also fail to take appropriate action within 30 days of receiving disputes of other mortgagors who submit letters that constitute qualified written requests.

99. Defendants Chase and SPS violated §2605(e)(3) by providing information to credit reporting agencies regarding delinquent and/or overdue payments owed by Plaintiff during the sixty (60) day period following Chase's receipt of Plaintiff's "qualified written requests."

100. Defendants Chase's and SPS' violations were numerous and consistent, constituting a "pattern or practice" of noncompliance with the requirements of 12 U.S.C §2605 *et seq*.

101. As a result of the conduct, actions and inactions of Defendants Chase and SPS, Plaintiff suffered actual damages, including out-of-pocket expenses and emotional and mental distress.

102. Defendants' conduct were the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to 12 U.S.C. §2605f(1)(A), statutory damages pursuant to 12 U.S.C. §2605f(1)(B), costs and reasonable attorney's fees pursuant to 12 U.S.C. §2605f(3).

**WHEREFORE**, Plaintiff respectfully prays:

(a) $151,000 in punitive, actual damages and statutory damages for Counts I and III;
(b) $10,000 in actual damages plus $1,000 in statutory damages for Count II;
(c) $125,000 in actual and/or compensatory damages for Count III;
(d) $350,000 in punitive and actual damages for Counts IV-VI;
(e) Judgment declaring SPS is not entitled to enforce the Note for Count VII;
(f) Jury award of actual and statutory damages for Count VIII;
(g) Award costs and reasonable attorney's fees and costs; and
(h) Any such other relief the Court deems just, equitable and proper.

Respectfully submitted,

_____
RICHARD S. STERN
D.C. Bar No. 205377
419 7th Street, N.W.
Suite 405
Washington, D.C. 20004
202-393-2261
Attorney for Plaintiff

## JURY TRIAL DEMAND

The Plaintiff demands a trial by jury on all issues.

_____
RICHARD S. STERN