**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KHALID MOHAMED,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**SELECT PORTFOLIO SERVICING,<br>INC.**, *et al.*,<br><br>    **Defendants.** | **Civil Action No. 15-1016 (JEB)** |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Khalid Mohamed claims he is in a bind.  He knows he has an obligation to make payments on his mortgage, but alleges he does not know whom to pay.  None of his purported loan servicers has sufficiently proven to him its authority to collect his payments.  Concerned he might pay the wrong entity, he has conveniently chosen not to pay anyone for more than five years.  His purported loan servicers, including Defendants JP Morgan Chase Bank and Select Portfolio Servicing, Inc., thus reported his mortgage account as delinquent to the national credit bureaus.  Frustrated by the subsequent decline in his credit score and his inability to get a satisfactory answer to his questions about the owner and servicer of his mortgage, he filed this suit against Chase and SPS, alleging various statutory and common-law causes of action.  SPS now moves to dismiss the counts against it, arguing both that Plaintiff lacks standing and that he has failed to state any claims upon which relief can be granted.  As Mohamed has cleared some of the pleading hurdles, the Court will grant the Motion in part and deny it in part.

I.      **Background**

Although SPS plausibly maintains that this is a case about someone looking for a way to avoid paying his mortgage, the Court must, at this stage, consider the facts as pled in the Amended Complaint.  Mohamed begins by explaining that he owns a residential property in the District of Columbia that was subject to a mortgage, as evidenced by a promissory note payable to GreenPoint Mortgage Funding, Inc.  See ECF No. 16 (Amended Complaint), ¶ 5.  He initially made mortgage payments to EMC Mortgage Corporation, which claimed to have acquired servicing of the loan.  Id., ¶ 6.

For those unfamiliar with the concept, a mortgage-loan servicer "handles the day-to-day tasks of managing [the] loan."  Consumer Financial Protection Bureau, What's the Difference Between a Mortgage Lender and a Servicer?, http://www.consumerfinance.gov/askcfpb/198/whats-the-difference-between-a-mortgage-lender-and-a-servicer.html (last visited Oct. 18, 2016).  Typically, a loan servicer "processes your loan payments, responds to borrower inquiries, keeps track of principal and interest paid, manages your escrow account, and may initiate foreclosure if you miss too many loan payments."  Id.  While a servicer may be the same company that gave out and/or owns the loan, it need not be.  Id.; see also Parker v. Bank of America, N.A., 99 F. Supp. 3d 69, 72 n.2 (D.D.C. 2015) ("A mortgage servicer manages loans owned by third parties (hereinafter referred to as 'noteholders') in exchange for a servicing fee and ancillary fees such as late fees charged to a borrower.") (citing Mortg. Bankers Ass'n, Residential Mortgage Servicing in the 21st Century 5 (2011)).

Mohamed stopped making mortgage payments after EMC "failed to establish it was a holder of the Note" in response to his request for such information.  Id., ¶7.  EMC then declared the Note in default and continued to try to collect the debt.  Id., ¶ 8.  Mohamed, in turn,

continued to request documentation proving that EMC was entitled to payment.  Id., ¶ 9.  In April 2011, EMC responded to one of Mohamed's letters with a certified copy of the Note, which was payable to GreenPoint and "not [e]ndorsed."  Id., ¶¶ 10-11.  EMC also informed Plaintiff that it was transferring servicing of the loan to JP Morgan Chase Bank and that Wells Fargo Trust was the new owner of the loan.  Id., ¶ 10.  Mohamed requested proof of the transfers to these entities, but neither Chase nor EMC provided documentation to his satisfaction.  Id., ¶¶ 14-15.

In 2012, without first giving notice, Chase changed the locks on the residence and removed Mohamed's personal property.  Id., ¶¶ 16-17.  Plaintiff continued to contact Chase to dispute its ability to collect mortgage payments.  Id., ¶ 18.  In a letter sent in September 2014, he informed Chase that it could not declare him delinquent on his payments absent providing proof that it was entitled to enforce the Note and therefore should not report his account as delinquent to the credit bureaus.  Id., ¶ 19.  He asked Chase to provide various documents, including a payoff statement and proof of Chase's authority to receive payments, and to provide him an opportunity to inspect the Note.  Id.  Mohamed explained that he "intend[ed] on satisfying th[e] debt obligation and it is essential that Chase show that it is the proper party to pay."  Id.  Chase did not respond with the requested information.  Id., ¶ 20.

On October 1, 2014, Plaintiff contacted three credit-reporting agencies (CRAs) to dispute the mortgage account.  The CRAs informed Mohamed that they had forwarded the dispute to Chase, which had verified the information on the account as accurate.  Id., ¶ 21.  Chase continued to report the mortgage account as being delinquent from April 2011 onward.  Id., ¶¶ 22-23.

On October 17, 2014, Chase sent Mohamed a letter informing him that Defendant Select

Portfolio Servicing, Inc., would be his new loan servicer.  Id., ¶ 24.  Several months later, in

August 2015, Mohamed wrote to Chase and SPS and asked Chase — not SPS — to provide

information about the amounts of his principal and interest payments.  Id., ¶¶ 25-26.  He also

stated that Chase was not a holder of the Note and therefore could not transfer it to SPS, and that

SPS could not collect payments on the Note.  Id., ¶ 27.  Finally, he asked SPS to identify the

entity in possession of the original Note, send him a certified copy of the original Note, and

"identify . . . the lender or owner of the mortgage loan."  Id.  Neither Chase nor SPS responded

to Plaintiff's inquiries.  Id., ¶ 28.  SPS continued to report the account as delinquent and did not

notate that the account was disputed.  Id., ¶ 29.

Mohamed then forwarded his August 2015 letter to the three CRAs.  Id., ¶ 30.  They in

turn passed on notice of the dispute to Chase and SPS, both of which verified that the

information they had reported about Mohamed's delinquent mortgage payments was consistent

with their prior reports.  Id.  Chase and SPS did not, however, otherwise investigate whether the

account information they had reported was accurate.  Id.

Mohamed's credit reports, which included the delinquent payments, were furnished to

creditors.  Id., ¶ 31.  His credit score subsequently declined "significantly," hindering his ability

to obtain credit.  Id., ¶ 32.

In June 2015, Plaintiff filed this action against Chase in the Superior Court of the District

of Columbia, alleging various statutory and common-law causes of action and seeking damages,

costs, and declaratory relief.  See ECF No. 1-1.  Chase removed the case to federal court.  See

ECF No. 1.  In February 2016, Plaintiff filed the operative Amended Complaint, which added

SPS as a defendant.  See ECF No. 15; Minute Order of Feb. 29, 2016; Am. Compl., ¶ 4.  SPS

then filed this Motion to Dismiss, see ECF No. 21, which is now ripe.

## II.    Legal Standard

In evaluating a motion to dismiss, the Court must "treat the complaint's factual

allegations as true and must grant plaintiff the benefit of all inferences that can be derived from

the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)

(citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).  This standard governs the Court's considerations of Defendant's contentions under both

Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[I]n

passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject

matter or for failure to state a cause of action, the allegations of the complaint should be

construed favorably to the pleader."); Walker v. Jones, 733 F.2d 923, 925–26 (D.C. Cir. 1984)

(same).  The Court need not accept as true, however, "a legal conclusion couched as a factual

allegation," nor an inference unsupported by the facts set forth in the Amended Complaint.

Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain,

478 U.S. 265, 286 (1986)).

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of

proving that the Court has subject-matter jurisdiction to hear his claims.  See DaimlerChrysler

Corp. v. Cuno, 547 U.S. 332, 342 & n.3 (2006); Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir.

2015).  A court has an "affirmative obligation to ensure that it is acting within the scope of its

jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d

9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . .

will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for

failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a cause of action when the complaint "fail[s] to state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III.   Analysis

The Amended Complaint sets forth eight counts.  Just four, however, are alleged as to SPS — violations of the Fair Credit Reporting Act (Count I); violations of the Fair Debt Collection Practices Act (Count II); declaratory judgment (Count VII); and violations of the Real Estate Settlement Procedures Act (Count VIII).  See Am. Compl., ¶¶ 33-45, 82-102.  The Court will not address the other four counts — for defamation, trespass, conversion, and breach of contract — that were alleged only as to Chase. Id., ¶¶ 46-81.

In moving to dismiss, SPS contends that Mohamed has failed to state a claim as to each of the four counts alleged against it, and it also raises a separate threshold argument — viz.,

Plaintiff lacks standing to raise claims based on alleged defects in the transfer of the Note. See ECF No. 21 (Motion to Dismiss) at 4. The Court addresses the standing argument first and then proceeds to the four counts alleged against SPS.

A. Standing

Article III of the United States Constitution limits the jurisdiction of the federal courts to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To establish standing, a party must, at a constitutional minimum, meet the following criteria. First, the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Id. (alterations in original) (citation omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).

Other judges in this District have concluded that "an individual who is not a party to, or an intended beneficiary of, an assignment agreement lacks standing to challenge the validity of the assignment." Rivera v. Rosenberg & Assocs., LLC., 142 F. Supp. 3d 149, 155 (D.D.C. 2015); see also Taylor v. Wells Fargo Bank, N.A., 85 F. Supp. 3d 63, 71 (D.D.C. 2015); Jessup v. Progressive Funding, 35 F. Supp. 3d 25, 35 (D.D.C. 2014). Relying on those decisions,

Defendant argues that because Plaintiff's claims "are all based upon [his] untenable theory that the Note was not properly transferred to SPS" and Mohamed is not a party to the Note's transfer, he lacks standing to bring his claims and they should be dismissed. <u>See</u> Mot. at 4.

Such an argument unfairly characterizes the thrust of Plaintiff's suit. Mohamed never expressly alleged that SPS was transferred or assigned ownership of the Note; he alleged only that it claimed to be his loan servicer. <u>See</u> Am. Compl., ¶ 24. While a loan servicer may be the holder of a Note, it need not be. The statutory causes of action alleged here, moreover, do not depend on an assignment of the Note to SPS. Instead, they are premised on SPS's alleged failures to comply with various investigation and reporting requirements imposed on loan servicers by the FCRA, FDCPA, and RESPA. <u>See</u> Am. Compl., ¶¶ 33-45, 94-102. Defendant's standing argument is therefore misplaced. Having so concluded, the Court now proceeds to separately address whether Plaintiff has plausibly alleged FCRA, FDCPA, declaratory judgment, and RESPA counts.

B. <u>Fair Credit Reporting Act</u>

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 52 (2007). In addition to imposing duties on consumer reporting agencies, the Act "imposes some duties on the sources that provide credit information to CRAs." <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1153 (9th Cir. 2009). More specifically, Section 1681s-2 imposes two sets of duties on "furnishers" of credit information. (Neither party here disputes that SPS is a "furnisher" of such information for FCRA purposes.) The first, laid out in subsection (a), governs their responsibilities to provide accurate information to CRAs in the first instance, to update and correct information that they later determine is incomplete or inaccurate,

and to notify CRAs about information that a consumer has disputed.  See 15 U.S.C. § 1681s-2(a).  The second set of duties, detailed in subsection (b), is triggered once they receive notices of consumer disputes from CRAs.  Id. § 1681s-2(b).  Specifically, if a consumer notifies a CRA that he disputes the accuracy of certain credit information, the CRA must inform the furnisher of the information about the dispute.  Id. § 1681i(a)(2).  After receiving such notice, the furnisher must:

> (A)     conduct an investigation with respect to the disputed information;
> (B)     review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) of this title;
> (C)     report the results of the investigation to the [CRA];
> (D)     if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E)     if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . for purposes of reporting to a [CRA] only, as appropriate, based on the results of the reinvestigation promptly –
> > (i)     modify that item of information;
> > (ii)    delete that item of information; or
> > (iii)   permanently block the reporting of that item of information.

Id. § 1681s-2(b)(1).

Sections 1681n and 1681o provide for private rights of action against those who willfully or negligently fail to comply with the FCRA's requirements.  Yet, the Act does not allow consumers to bring actions against furnishers for noncompliance with the first set of duties, § 1681s-2(a), instead leaving the enforcement of that provision to certain federal and state agencies and officials.  Id. § 1681s-2(c), (d); see also, e.g., Chiang v. Verizon New England Inc., 595 F.3d 26, 35 (1st Cir. 2010); Gorman, 584 F.3d at 1154; Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008).  The majority of courts have concluded,

conversely, that private rights of action <u>are</u> available against furnishers who violate their duties

under the second, § 1681s-2(b).  <u>See, e.g.</u>, <u>Gorman</u>, 584 F.3d at 1155; <u>Saunders</u>, 526 F.3d at 149;

<u>Chiang</u>, 595 F.3d at 36; <u>Boggio v. USAA Federal Sav. Bank</u>, 696 F.3d 611, 618 (6th Cir. 2012);

<u>Mazza v. Verizon Washington DC, Inc.</u>, 852 F. Supp. 2d 28, 34 (D.D.C. 2012).

To make out a § 1681s-2(b) claim against a furnisher, a plaintiff must establish that: (1)

he notified a CRA of a dispute related to his credit information; (2) the CRA then notified the

furnisher of the information about the dispute; and (3) the furnisher failed to fulfill the

obligations enumerated in § 1681s-2(b)(1).  <u>See</u> <u>Mazza</u>, 852 F. Supp. 2d at 35.

Here, Plaintiff alleged that he notified three CRAs of a dispute with SPS by forwarding

them the August 2015 letter he first sent to Chase and SPS.  <u>See</u> Am. Compl., ¶ 30.  He also

alleged, upon information and belief, that the CRAs then forwarded notice of the dispute to SPS.

<u>Id.</u>  Third, he alleged that SPS failed to fulfill its obligations under § 1681s-2(b)(1).  <u>Id.</u>

Specifically, Mohamed pled that SPS violated Sections 1681s-2(b)(1)(D) and (E) "by failing to

delete or modify the accounts after it concluded a reasonable investigation of Plaintiff's dispute."

<u>Id.</u>, ¶ 34.  In addition, without citing a specific subsection, he alleged that "SPS further violated

the FCRA when it failed to notate the mortgage account was disputed after receiving Plaintiff's

dispute via the credit bureaus."  <u>Id.</u>, ¶ 37.  The Court considers each in turn.

As quoted above, Sections 1681s-2(b)(1)(D) and (E) require that <u>if</u> an investigation

reveals that disputed information is incomplete, inaccurate, or unable to be verified, the furnisher

must report that finding to the CRAs and modify, delete, or block reporting of the information.

<u>See</u> 15 U.S.C. §§ 1681s-2(b)(1)(D), (E).  Plaintiff never alleged, however, that SPS in fact

concluded that the disputed information <u>was</u> incomplete, inaccurate, or unable to be verified.  On

the contrary, Mohamed alleged that SPS "determined that the information was being reported

accurately." Am. Compl., ¶ 30.  Given SPS's accuracy determination, its obligations enumerated

in Sections 1681s-2(b)(1)(D) and (E) were never triggered.

Yet, construing the Amended Complaint generously, the Court infers that Plaintiff also

sought to allege a violation of Section 1681s-2(b)(1)(A) — *i.e.*, that SPS did not "conduct an

investigation with respect to the disputed information," § 1681s-2(b)(1)(A), because it did not

"look[] into the merits of Plaintiff's claims" but instead "simply verif[ied] that the information

was being reported consistently with its prior reportings" and "made no effort to determine if its

prior reporting was accurate or inaccurate." Am. Compl., ¶ 30; see also Opp. at 7.  In other

words, the Court takes Plaintiff to have alleged that SPS did not investigate whether it had the

right to collect his mortgage payments as his loan servicer and thus whether it could report his

mortgage loan as delinquent. Am. Compl., ¶ 36.  The Amended Complaint "is sufficiently

detailed to provide notice of [that] claim[]," and the Court will therefore consider it. Bodoff v.

Islamic Republic of Iran, 424 F. Supp. 2d 74, 78 (D.D.C. 2006); see also MacIntosh v. Building

Owners & Managers Ass'n Int'l, 355 F. Supp. 2d 223, 228 (D.D.C. 2005) (pleadings shall be

construed "so as to do substantial justice").

While Defendant acknowledges that Plaintiff has alleged that it failed to investigate the

dispute, see Mot. at 5, SPS never directly responds to that allegation in its Motion or Reply.

Instead, it argues that it was not obligated to report the dispute to the CRAs because the dispute

was meritless. Id. at 5-6; see § 1681s-2(a)(3).  But accuracy of the reporting does not excuse a

furnisher's duty under the FCRA to reasonably investigate the dispute. See, e.g., Tieffert v.

Equifax Info. Servs., LLC, 2014 WL 7240263, at *4 (E.D. Va. Dec. 19, 2014) ("Although the

accuracy of the reported information may weigh in favor of Nationstar having conducted a

reasonable investigation, accuracy is not dispositive of Plaintiff's FCRA claim."); Modica v.

Am. Suzuki Fin. Servs. Co., 2013 WL 656495, at *4 (D. Ariz. Feb. 22, 2013) ("Under the statute

Defendant had a duty to reasonably investigate the disputed charge even if it happened to be

correct.").  As Plaintiff has sufficiently alleged a failure to investigate, this portion of his FCRA

count may proceed.

Finally, the Court turns to Mohamed's allegation that SPS violated the FCRA "when it

failed to notate the mortgage account was disputed after receiving Plaintiff's dispute via the

credit bureaus."  Am. Compl., ¶ 37.  Defendant rejoins that it was not required to notate the

dispute.  See Mot. at 6.  The duty to provide notice of a dispute is set forth at § 1681s-2(a)(3).

As previously explained, the FCRA does not permit consumers to bring actions against

furnishers for noncompliance with the duties described at § 1681s-2(a) — enforcement is left to

certain federal and state agencies and officials.  Several other circuits, however, have found that

although private plaintiffs may not challenge a furnisher's initial failure to report information as

disputed, as required by § 1681s-2(a)(3), they may challenge a furnisher's failure to report it

after receiving notice of a dispute in accordance with § 1681s-2(b), if the absence of such a

notation would render the information materially misleading.  See Gorman, 584 F.3d at 1162-64;

Saunders, 526 F.3d at 149-50; cf. Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1186

(10th Cir. 2013).  The reasoning of these cases appears persuasive, but because another piece of

Plaintiff's FCRA count survives — the failure-to-investigate claim under § 1681s-2(b)(1)(A) —

the Court need not resolve the issue definitively now.  See Berlin v. Bank of America, N.A., 101

F. Supp. 3d 1, 25 (D.D.C. 2015).

C.   Fair Debt Collection Practices Act

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by

debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action

to protect consumers against debt collection abuses."  15 U.S.C. § 1692e.  To that end, "[t]he Act

regulates interactions between consumer debtors and debt collectors."  Jerman v. Carlisle,

McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010) (alterations, quotation marks,

and citation omitted).  Among other things, it prohibits the use of "any false, deceptive, or

misleading representation or means in connection with the collection of any debt," 15 U.S.C.

§ 1692e, and the use of "unfair or unconscionable means to collect or attempt to collect any

debt."  Id. § 1692f.  Those who violate these proscriptions may be subject to administrative-

enforcement actions, id. § 1692l(a), as well as private suits to recover actual and statutory

damages.  Id. § 1692k.

Mohamed alleged that SPS violated Section 1692e of the FDCPA by making false

statements to the CRAs and by failing to report to them that his account was disputed.  See Am.

Compl., ¶¶ 39-45.  "A private plaintiff seeking to hold a person liable under Section 1692e . . .

must establish that: (1) the defendant is a 'debt collector'; (2) who took an action 'in connection

with the collection of a[] debt'; and (3) the action violated the substantive proscriptions in those

provisions."  Lipscomb v. The Raddatz Law Firm, PLLC, 109 F. Supp. 3d 251, 256 (D.D.C.

2015) (citing Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 384 (7th Cir. 2010); Muldrow

v. EMC Mortg. Corp., 657 F. Supp. 2d 171, 174-75 (D.D.C. 2009)).

SPS argues that this count is deficient for three reasons: (1) Plaintiff never alleged that

SPS is a debt collector; (2) intentional default cannot support an FDCPA claim; and (3) SPS's

failure to report the account as disputed could not possibly have misled the CRAs and thus

cannot constitute an FDCPA claim.  The Court addresses each in turn.

The FDCPA defines a "debt collector" as any person "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  SPS contends that because Mohamed did not allege either that SPS's principal purpose is debt collection or that it regularly collects debts on behalf of another, he has not alleged that SPS is a debt collector.  See Mot. at 7.

Defendant's first argument is correct.  Plaintiff alleged in the Amended Complaint that SPS "specializes in the servicing of single-family residential mortgage loans, including both performing and non-performing mortgage loans."  Am. Compl., ¶ 4.  He also alleged that Chase informed him SPS would acquire servicing of his loan, id., ¶ 24; that his loan had previously been reported as in default, id., ¶ 8; and that SPS reported him to the CRAs as delinquent on his mortgage payments.  Id., ¶ 29.  He further alleged that he asked SPS to identify "the lender or owner of the mortgage loan," id., ¶ 27, suggesting that he did not believe SPS to be attempting to collect on its own debt, but rather on the debt of another.  These allegations do not "provide any factual basis from which [the Court] could plausibly infer that the principal purpose of [SPS's] business is debt collection.  Rather, the complaint's factual matter, viewed in the light most favorable to [Plaintiff], establishes only that debt collection is some part of [SPS's] business, which is insufficient to state a claim under the FDCPA."  Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1209 (9th Cir. 2013) (emphasis added) (citation omitted); see also Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1137 (N.D. Cal. 2013).

Defendant's second position, conversely, does not hold water.  Mohamed has sufficiently pled that SPS regularly collects or attempts to collect debts owed or due another.  See Rockridge Trust, 985 F. Supp. at 1137 (concluding that second "debt collector" definition was satisfied

where plaintiff alleged Wells Fargo regularly collects debts owed to another by servicing residential-mortgage loans and, acting as a loan servicer, attempted to collect a debt in default). The Court thus rejects Defendant's initial position on Plaintiff's FDCPA claim.

SPS's next argument — that "Plaintiff's intentional default does not support an FDCPA claim," Mot. at 7 (capitalization removed) — is more compelling.  Although Defendant's exposition of its position is somewhat unclear, the Court infers that it is arguing that Mohamed cannot state a claim under the FDCPA for false reporting because SPS's reports to the CRAs that Plaintiff's mortgage account was delinquent were not false.  Plaintiff acknowledges that he refused to make payments on his mortgage for several years, see Am. Compl., ¶ 7, even though he "maintain[ed] an obligation to pay the legitimate holder of the Note."  Opp. at 7.  In other words, regardless of the identity of the loan servicer, Plaintiff's obligations under the Note did not change: Mohamed may or may not have been obligated to pay SPS, but he was obligated to pay someone.  He did not, and SPS's reports to the CRAs that Mohamed had not made mortgage payments thus were not "false, deceptive, or misleading."  15 U.S.C. § 1692e.

That is not the end of the story, however.  Again, part of Mohamed's FDCPA count is the allegation that SPS never reported that his account was disputed when it reported his credit information to the CRAs.  See Am. Compl, ¶ 43.  Similar to its second argument about intentional default, Defendant maintains that its failure to mention the dispute to the CRAs could not be misleading because Plaintiff concedes his lack of payment.  See Mot. at 8.  But the FDCPA defines false credit information to "includ[e] the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  The FDCPA does not limit that reporting obligation to disputes the furnisher believes to be valid.  See Gomez v. Portfolio Recovery Assocs., LLC, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016) ("The FDCPA did not obligate Portfolio to

report the Debt as disputed only if in retrospect Portfolio determined that the dispute was justified. . . . Portfolio cannot avoid liability by contesting the validity of the dispute.") (citations omitted); Irvine v. I.C. System, Inc., 2016 WL 1258586, at *6 (D. Colo. Mar. 31, 2016) ("that the consumer has disputed a particular debt . . . is always material") (quoting Llewellyn, 711 F.3d at 1189); Hoffman v. Partners in Collections, Inc., 1993 WL 358158, at *4 (N.D. Ill. Sept. 14, 1993) ("There is no requirement that any dispute be 'valid' for [15 U.S.C. § 1692e(8)] to apply; only that there be a dispute."). Plaintiff plausibly alleged that he disputed his account, see Am. Compl., ¶ 27 ("Plaintiff disputed that SPS could declare Plaintiff in default and disputed that SPS could make payments on the Note"), and that SPS failed to communicate to the CRAs that the account was disputed. Id., ¶ 29. For that reason, Plaintiff's claim under § 1692e survives.

    D. Declaratory Judgment

Plaintiff's next count is styled as a claim for "declaratory judgment." See Am. Compl., ¶¶ 82-92. Mohamed seeks a declaration that "SPS is not a 'holder of the Note and without right to enforce the Note." Id., ¶ 91. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." Id. § 2201(a). The Act does not, however, provide a stand-alone cause of action; it only authorizes a form of relief. See Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011); see also, e.g., Smirnov v. Clinton, 806 F. Supp. 2d 1, 11 (D.D.C. 2011) ("The Declaratory Judgment Act . . . is not 'an independent source of federal jurisdiction'[;] . . . [r]ather, the statute merely creates a remedy in cases otherwise within the Court's jurisdiction.") (quoting C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201 (D.C. Cir. 2002)). To the extent Plaintiff seeks to assert a cause of action for "declaratory judgment," then, it is dismissed. If he

wishes to seek it as a form of relief, he will have to prove that he has standing to do so.  See Part

III.A, *supra*.

      E.  Real Estate Settlement Procedures Act

      Finally, Plaintiff alleged violations of RESPA, 12 U.S.C. § 2605.  This Act requires the

servicer of a federally related mortgage loan to respond to certain borrower inquiries known as

"qualified written requests."  Id. § 2605(e)(1)(B).  A QWR is "a written correspondence, other

than notice on a payment coupon or other payment medium supplied by the servicer, that . . .

includes a statement of the reasons for the belief of the borrower, to the extent applicable, that

the account is in error or provides sufficient detail to the servicer regarding other information

sought by the borrower."  Id. § 2605(e)(1)(B)(ii).

      The type of information sought dictates the response required from the servicer.  If a

borrower's correspondence constitutes a QWR "for information relating to the servicing of such

loan," the servicer must provide a written response acknowledging receipt of the correspondence

within 5 days and must make any necessary corrections, conduct an investigation, and provide

the borrower with a written explanation including any information requested within 30 days.  Id.,

§§ 2605(e)(1)(A), (2).  If a borrower submits a QWR "relating to a dispute regarding the

borrower's payments, a servicer may not provide information regarding any overdue payment,

owed by such borrower and relating to such period or qualified written request, to any consumer

reporting agency" for 60 days.  Id. § 2605(e)(3).  Failure to comply with the statute's

requirements renders the servicer liable to the borrower for damages and costs.  Id. § 2605(f).

      Plaintiff's Amended Complaint discusses only one letter sent to SPS — on August 10,

2015.  See Am. Compl., ¶ 25.  The Court assumes that letter is the document Mohamed argues

constitutes a QWR.  In the letter, Mohamed asked SPS to "provide a payoff statement," "identify

the entity in possession of the original Note and send him a certified copy of the original Note," identify "the lender or owner of the mortgage loan," and "make arrangements for [him] to physically inspect the original promissory note," and he also "disputed that SPS could declare Plaintiff in default and disputed that SPS could collect payments on the Note." Id., ¶¶ 26-27. Plaintiff alleged that Defendant failed to provide him notice that it had received his QWR, in violation of 12 U.S.C. § 2605(e)(1)(A); that SPS failed to take appropriate action within 30 days of receiving the QWR, in violation of § 2605(e)(2); and that SPS reported his payments as delinquent to the CRAs during the 60-day period following receipt of the QWR, in violation § 2605(e)(3). See Am. Compl., ¶¶ 95, 97, 99.

In seeking dismissal, Defendant argues that Mohamed has failed to state a RESPA claim because his letter did not constitute a QWR. The letter, SPS contends, did not allege that it had committed any account-related errors and requested only the identity of the loan owner, which is unrelated to servicing. See Mot. 14-15 (citing Chambers v. Citimortgage, Inc., 2014 WL 1819970, at *4 (W.D. Tex. May 7, 2014)).

The information requested need not relate to servicing, however, for a letter to constitute a QWR. The very case SPS cites in support of its argument, Chambers, explained that the "requirement . . . that the QWR request information related to servicing . . . is found nowhere within RESPA's definition of QWR." 2014 WL 1819970, at *4. Instead, whether a letter requested information relating to servicing is "critical" only to whether the QWR required the servicer to respond in accordance with Sections 2605(e)(1)(A) and (e)(2) of RESPA. Id. (citing Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666 n.4 (9th Cir. 2012)). As Plaintiff plausibly alleged that his August 2015 letter constituted a QWR, see Am. Compl., ¶ 94, the Court first

proceeds to consider whether it triggered the response requirements under Sections 2605(e)(1)(A) and (e)(2).  It then analyzes Mohamed's (e)(3) claim.

Under RESPA, "[t]he term servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).  Requests for information about loan ownership and for copies of a note are not requests for information related to the servicing of the loan.  See Medrano, 704 F.3d at 667 & n.5 (holding that "letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)" and listing eight district court decisions that also so held); Chambers, 2014 WL 1819970, at *4; Holloway v. Wells Fargo Bank, N.A., 2013 WL 1187156, at *23 (N.D. Tex. Feb. 26, 2013), adopted 2013 WL 1189215 (N.D. Tex. Mar. 22, 2013) (request for copies of note failed to state RESPA claim); Kelly v. Fairon & Assoc., 842 F. Supp. 2d 1157, 1160 (D. Minn. 2012) ("Requests for information pertaining to the identity of a note holder . . . do not relate to servicing."); Angelini v. Bank of Am., 2011 WL 2433485, at *5 n.3 (D. Or. Apr. 27, 2011) ("The RESPA notice requirement by its terms extends only to the transfer of loan servicing, not to the transfer of ownership of the loan."); Marsh v. BAC Home Loans Servicing, LP, 2011 WL 1196415, at *8 n.8 (M.D. Fla. Mar. 29, 2011) (note-ownership information did not relate to servicing of loan).  RESPA's implementing regulation, moreover, clarifies that a request for a payoff statement "need not be treated by the servicer as a request for information."  12 C.F.R. § 1024.36(a); see also, e.g., Hudgins v. Seterus, Inc., 2016 WL 3636859, at *6 (S.D. Fla. June 29, 2016).  As none of the information Plaintiff requested from Defendant — a payoff statement, a certified copy of the Note, the identity of the loan's owner, and an opportunity to

physically inspect the Note — constituted information related to servicing, Plaintiff's QWR did not trigger the response requirements under Sections 2605(e)(1)(A) and (e)(2).

Hold tight; there is hope for Plaintiff yet.  In an effort to save his RESPA claim, Mohamed invoked in his Opposition a statutory provision not cited in his Amended Complaint — § 2605(k)(1)(D).  See Opp. at 15.  According to that provision, "[a] servicer of a federally related mortgage shall not fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan."  12 U.S.C. § 2605(k)(1)(D).  Defendant cries foul, arguing that Plaintiff cannot amend his pleading through his Opposition.  See Reply at 7-8 (citing Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003)).  But Plaintiff's § 2605(k)(1)(D) argument did not emerge out of nowhere.  His Amended Complaint clearly alleged all the facts needed to state such a claim — he asked SPS in a written communication to identify the owner of the mortgage loan and SPS never responded.  See Am. Compl., ¶¶ 27-28.  "[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory."  Skinner v. Switzer, 562 U.S. 521, 530 (2011).  The Court therefore shall consider the § 2605(k)(1)(D) argument.  As Defendant does not otherwise address the claim in its Motion to Dismiss, the Court holds that it was plausibly alleged.

Plaintiff's final RESPA claim is that SPS violated § 2605(e)(3) by providing information about his delinquent payments to the CRAs within 60 days of receiving the QWR.  See Am. Compl., ¶ 99.  That allegation, however, is nothing more than a "naked assertion" without any "further factual enhancement."  Twombly, 550 U.S. at 557.  The Amended Complaint alleged only that SPS "reported that Plaintiff was delinquent on the disputed payments."  Am. Compl., ¶ 29.  It does not allege when it did so, or to whom.  Without any such factual assertions, the

Court cannot conclude that Plaintiff plausibly alleged a violation of the 60-day no-reporting period imposed by § 2605(e)(3).  See Choudhuri v. Wells Fargo Bank, N.A., 2016 WL 3212454, at *2 (N.D. Cal. June 10, 2016) (granting motion to dismiss § 2605(e)(3) claim because plaintiff "[did] not allege any facts suggesting that Wells Fargo provided information to consumer reporting agencies regarding overdue payments during the prohibited 60-day period"); Ramos-Gonzalez v. First Bank of P.R., 2015 WL 6394409, at *3 (D.P.R. Oct. 22, 2015) ("[T]he pleadings fail to allege when the purported qualified written request was sent to and received by Banco Popular, and when the negative reporting occurred.  However, these elements are critical to a showing of whether information regarding allegedly overdue loan payments could have been released to consumer reporting agencies under 12 U.S.C. § 2605(e)(3)."); Urbano v. Bank of Am., N.A., 2012 WL 2934154, at *11 (E.D. Cal. July 18, 2012) (plaintiff failed to state viable RESPA claim where he did not allege "when the reporting occurred" or "to which agencies the reporting was made").

Mohamed's RESPA count, consequently, will be limited to § 2605(k)(1)(D).

## IV.   Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss Plaintiff's Amended Complaint.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  October 19, 2016